UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EFREN CAPOTE,

      Petitioner,

v.                            Case No.  2:26-cv-1348-JES-NPM

WARDEN, GLADES COUNTY
DETENTION CENTER, et al.,

      Respondents.
_____/

## OPINION AND ORDER

Petitioner Efren Capote, an immigration detainee currently held at the Glades Detention Center, initiated this action by filing a 28 U.S.C. § 2241 petition for writ of habeas corpus. (Doc. 1). Respondents filed a response and a supplemental response to the petition. (Doc. 7; Doc. 9). Capote has filed a reply. (Doc. 8). Upon review of the parties' filings, the Court finds that the petition must be granted.

## I.  Background

Efren Capote, a citizen of Cuba, entered the United States in 1998. (Doc. 7 at 2). After serving a prison sentence on his conviction for health care fraud, an immigration judge ordered Capote removed to Cuba on January 13, 2010. (Id. at 3). He was held in immigration custody for 90 days before being released on an order of supervised release on April 8, 2010. (Id.) During a regularly scheduled visit with Immigration and Customs

Enforcement (ICE) on November 3, 2025, Petitioner's order of supervision was revoked, and he was re-detained. (Id.)

## II. Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

Capote argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention has exceeded six months and there is no significant likelihood of removal in the reasonably foreseeable future. In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it

2

established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id. [1]

Here, there is no dispute that Capote has been in ICE custody for more than six months following his order of removal and that little has been done to effectuate his removal. Respondents contend that Capote is not entitled to release because ICE intends to eventually remove him to Mexico. In support, they offer the declaration of Deportation Officer Authur McLaughlin. (Doc. 9-1). Officer McLaughlin explains that, at some point, ICE intends to transport Capote "to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico." (Id.) Capote "will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office." (Id.) At that time, the "receiving ERO filed office will then notify Mexico's Instituto Nacional de Migracion (INM) of

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months. See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

the petitioner's upcoming removal to Mexico.  (Id.)  Then, "[f]ollowing INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico."  (Id. at 3).

Officer McLaughlin's statement merely describes the general process for third-country removals to Mexico.  There is no timeline provided for Capote's removal.  Nor is there any indication of whether Mexico will offer "final acceptance" to Capote.  In fact, Respondents do not suggest that ICE has actually communicated with Mexico (or any other country) specifically regarding Capote.  Nor have Respondents demonstrated that necessary travel documents have been sought—let alone obtained—for any country.  Under Zadvydas, the scant efforts taken here (attempting to have Capote sign documents agreeing to removal to Mexico) are insufficient to show a realistic likelihood of Capote's removal in the reasonably foreseeable future.  See Douglas v. Baker, 812 F. Supp. 3d 525, 532 (D. Md. Oct. 24, 2025) ("[T]he deference baked into the Zadvydas standard does not permit the government to detain a noncitizen and then sit on its hands. Such inaction, or lack of progress in effectuating removal, is precisely what Zadvydas forbids.").[2]

---

[2] The Court's confidence in Petitioner's foreseeable removal is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there.  See

In short, Respondents have had more than fifteen years—and more than six months since his last detention—to remove Capote and have still been unable to articulate a specific plan for his removal to Cuba, Mexico, or any other country.  Based on the evidence, or lack thereof, the Court finds that Respondents have failed to show a significant likelihood that Capote will be removed in the reasonably foreseeable future.  Therefore, he is entitled to release from detention under <u>Zadvydas</u>, but he remains subject to the terms of an order of supervision.  If Capote fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention.  <u>See</u> 8 U.S.C. § 1253(b); <u>Zadvydas</u>, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

---

<u>Sanchez v. Bondi, et al.</u>, No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner); <u>Arenado-Borges v. Bondi</u>, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").  And while there may be some possibility that Mexico will eventually accept Petitioner, "that is not same as a significant likelihood that [he] will be accepted in the *reasonably foreseeable future*." <u>Arenado-Borges</u>, 2025 WL 3687518, at *4 (emphasis added, quotations omitted).

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Capote to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.   Efren Capote's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

2.   Respondents shall release Capote within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.   The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on May 22, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

6